UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARNELL GREEN, ET AL.                    CIVIL ACTION

VERSUS                                   NO: 11-2466

RONALD C. GUIDRY, ET AL.                 SECTION: J(2)

## ORDER AND REASONS

Before the Court is Defendant, Ronald C. Guidry's Motion for Summary Judgment **(Rec. Doc. 21)**, Plaintiffs' opposition to same **(Rec. Doc. 22)**, and Defendant's reply thereto **(Rec. Doc. 29)**. Having considered the motion, the legal memoranda, the record, and the applicable law, the Court finds that the Defendant's motion should be **GRANTED** for the reasons set out more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On August 29, 2011, Plaintiffs, Darnell and Kathleen Green, filed suit in Louisiana state court against Ronald C. Guidry ("Guidry"), Allstate Fire & Casualty Ins. Co. ("Allstate"), the National Flood Insurance Program ("NFIP"), and XYZ Insurance Company ("XYZ"), Guidry's hypothetical errors and omissions

insurer, claiming damages for breach of fiduciary duty, fraud, negligence, detrimental reliance, payment of a thing not owed, and violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401 *et seq* ("LUTPA"). On September 30, 2011, Allstate removed the suit to federal court. On April 10, 2012, this Court dismissed the Plaintiffs' claims against NFIP without prejudice. (Rec. Doc. 12) On October 11, 2012, the Court entered a sixty-day conditional order of dismissal as to the Plaintiffs' claims against Allstate, after the parties reached a settlement. (Rec. Doc. 32) Consequently, the only claims remaining in the instant suit are Plaintiffs' claims against Guidry, Plaintiffs' Allstate agent, which are subject to the instant motion for summary judgment.[1]

In their petition, Plaintiffs claim that they own two residences, one in Terrytown, Louisiana ("the Fielding Street property") and one in Gretna, Louisiana ("the Monroe Street property"), which they acquired in 1991 and 2006,[2] respectively.

---

[1] The claims against XYZ also remain; however XYZ is allegedly jointly and solidarily liable to Plaintiffs with Guidry on the grounds that it insured Guidry for errors and omissions during all times relevant to the litigation. (Rec. Doc. 1-1, ¶ 18)

[2] In her deposition, Mrs. Green testified that she actually purchased the Monroe Street property in 1999 as a rental property. See Depo Mrs. Green, (Rec. Doc. 21-3), Ex. B, p. 42. Mrs. Green testified in her deposition that she obtained a flood policy with Allstate through Mr. Guidry in 2004. Depo of Mrs. Green, Ex. B, p. 49. However, Mrs. Green also testified that she may have procured flood insurance on the Monroe Street property after Hurricane Katrina (in 2005) and that Hurricane Katrina might have been what motivated her to obtain flood insurance for the Monroe Street property. Depo. of Mrs. Green, Ex. B, pp. 137-39. Mrs. Green further testified that the only time that she discussed flood insurance with Guidry after 2005 was around 2008 or 2009 in relationship to the elevation of the Fielding Street property. Depo. of Mrs. Green, Ex. B, pp. 139-40.

(Rec. Doc. 1-1, ¶ 4)  After acquiring the properties, Plaintiffs allege that they purchased flood insurance on the properties through Guidry, their Allstate agent.  (Rec. Doc. 1-1, ¶ 5)  They assert that Allstate would write the flood policies, which were actually NFIP policies, collect the premiums for the policies from the Plaintiffs, and reimburse the NFIP.  (Rec. Doc. 1-1, ¶¶ 6-7) Plaintiffs allege that during the underwriting process, Guidry had actual and constructive knowledge of the correct flood zone for Plaintiffs' properties.  However, he allegedly knowingly mis-zoned the Plaintiffs' properties, which resulted in the issuance of flood policies with substantially higher annual premiums than what Plaintiffs allege they should have paid and higher commissions to Guidry.  (Rec. Doc. 1-1, ¶¶ 8-10)  Plaintiffs assert that the Defendants collected the higher premiums from the dates of the acquisition of the properties, 1991 and 2006,[3] respectively, until Plaintiffs filed suit in state court on August 29, 2011, after allegedly learning in June of 2011 that a neighbor's flood zone determination resulted in a much lower annual flood premium than Plaintiffs were being charged.  (Rec. Doc. 1-1, ¶¶ 11-12) Plaintiffs claim that after learning about the discrepancy, they contacted the Defendants who immediately acknowledged that Plaintiffs' properties had been erroneously mis-zoned. (Rec. Doc. 1-1, ¶ 13)

---

[3] See supra n. 2.

3

Plaintiffs claim that Guidry owed the Plaintiffs a fiduciary duty in connection with the placement and maintenance of the flood insurance coverage, and, that to the extent the insurance premiums for the residences were overcharged, Guidry breached his legal duties to Plaintiffs in the following non-exclusive ways: (1) failing to know the different types, terms, and conditions of insurance policies available, (2) failing to use reasonable diligence in obtaining insurance that a customer requests, and (3) failing and neglecting to exercise the degree of care expected of a prudent insurance broker or agent, thereby causing the alleged overpayment. (Rec. Doc. 1-1, ¶ ¶ 19-24) Plaintiffs further allege that Guidry breached a duty owed to the Plaintiffs by failing to inform them that they were eligible for a Preferred Risk Policy ("PRP") through the NFIP, which could provide them with maximum policy limits for less than their current premium payments.[4]   In addition to their fraud and breach of fiduciary duty claims, Plaintiffs also assert claims against Guidry for detrimental reliance and payment of a thing not owed. (Rec. Doc. 1-1, ¶¶ 22, 25) They assert that they reasonably relied on Guidry's expertise and recommendations, and, that they assumed that the polices placed on the residences were accurate and reasonable and that the alleged

---

[4] See infra n. 5-6. Guidry disputes the Plaintiffs' assertion that he never offered them the option to procure a PRP for both of the properties at issue. However, for the purposes of the Motion for Summary Judgment only, Guidry assumes that the Plaintiffs' assertion on this point are true. (Rec. Doc. 21-1, p. 8, n. 2).

overpayments of premiums constitute payment of a thing not owed under Louisiana law. (Rec. Doc. 1-1, ¶¶ 22, 25) In the instant motion for summary judgment, Guidry seeks to dismiss all of Plaintiffs' claims.

## PARTIES' ARGUMENTS

Guidry argues that Plaintiffs' own deposition testimony establishes that: (1) Plaintiffs sued Guidry for allegedly failing to offer the Plaintiffs coverage under a PRP, (2) that Guidry procured the flood coverage for their properties as requested, and (3) that Guidry made any and all changes to the flood policies that Plaintiffs requested. Guidry argues that Plaintiffs' claims should be dismissed, because the instant case is factually indistinguishable from Lawrence v. Fidelity National Ins. Co., 2007 WL 1741785 (E.D. La. June 11, 2007), wherein this Court granted summary judgment in favor of an insurance agent who allegedly breached an obligation to offer the plaintiffs the best flood coverage at the best price by failing to inform the plaintiffs of their eligibility for a PRP through the NFIP. Guidry asserts that in Lawrence, the Court decided that an insurance agent has no duty to inform his customers of their eligibility for a PRP. Guidry argues that Plaintiffs cannot meet their burden of proving fraud, because Plaintiffs are unable to establish that Guidry misrepresented a material fact and conceded in their depositions that they have no evidence that Guidry intended to deceive them.

Guidry argues that Plaintiffs cannot meet their burden of establishing a LUTPA claim against Guidry, because they cannot establish fraud, misrepresentation, or any other unethical conduct. In addition, Guidry argues that Plaintiffs' claims for treble damages under LUTPA should be dismissed, because Plaintiffs have no evidence of a letter from the Attorney General's Office instructing Guidry to cease and desist any trade practices deemed "unfair" by the Attorney General's Office.  Guidry further argues that any claims pertaining to Plaintiffs' properties being mis-zoned should be dismissed with prejudice, because both Plaintiffs testified that they have no evidence their properties were mis-zoned.  Lastly, Guidry argues that all of Plaintiffs' claims against Guidry are perempted pursuant to Louisiana Revised Statute 9:5606.

The Plaintiffs counter that Guidry's reliance on <u>Lawrence</u> is misplaced.  Plaintiffs claim that <u>Lawrence</u> has no bearing on the issue of whether an agent has a duty to inform his client that a PRP is available to them at a lower price, because the agent in <u>Lawrence</u> prevailed solely based on the issue of peremption. The Plaintiff further argue, relying on <u>Durham v. McFarland, Gay & Clay, Inc.</u>, 527 So. 2d 403 (La. App. 4 Cir. 1998), that Guidry is a fiduciary under Louisiana law who owed the Greens a duty to inform them of the availability of the PRP.  In regard to their fraud and LUTPA claims, the Plaintiffs concede that they have no direct evidence of fraud or unfair trade practices.  However, they

6

allege that Guidry's silence when he allegedly had a duty to inform Plaintiffs of the availability of the PRP can constitute fraud and that the circumstantial evidence of self-dealing — the undisputed fact that Guidry wrote a PRP instead of a standard risk policy resulting in a financial gain to himself — creates a genuine issue of material fact with regard to whether Guidry intended to deceive Plaintiffs.   In opposition to Guidry's peremption argument, Plaintiffs argue that this case does not involve routine renewals, but rather, distinct events in which the Greens specifically negotiated for renewed policies with different or increased coverages.   Plaintiffs argue, relying on Fidelity Homestead Ass'n v. Hanover Ins. Co., 458 F. Supp. 2d 276 (E.D. La. 2006),  that Guidry's insistence on writing the standard risk policy instead of the PRP at each renewal constituted an act separate from the initial policy procurement, inflicted immediate additional damage on the Greens in the form of higher premiums, and operated to restart the peremption period.  Plaintiffs argue that because it is unclear when the last of the renewal transactions occurred, Guidry has not carried his burden of proving that the matter is perempted. Moreover, Plaintiffs argue that their fraud claims are not subject to the peremptive period and are timely under the doctrine of contra non valentum, because they filed suit two months after discovering the availability of the PRP.  The Plaintiffs also note in their opposition that Guidry failed to address their claim

against him for payment of a thing not owed.

In reply, Guidry contends that the Court's ruling in <u>Lawrence</u> governs the issue of Guidry's duty.  Moreover, Guidry reiterates that the agent in <u>Lawrence</u> prevailed on the both the issues of duty and peremption.  Guidry argues, relying <u>Federal Crop Ins. Corp. v. Merrill</u>, 332 U.S. 380 (1947), that all citizens are charged with knowledge of the law regarding federal insurance programs, regardless of their actual knowledge of what the regulations contain and that the Plaintiffs are thus charged with knowing about the existence of a PRP.  Guidry also notes that <u>Durham</u>, the case Plaintiffs rely on for the proposition that Guidry owed them a duty to inform them of their eligibility for a PRP, is distinguishable from the case at hand and that the cases this Court relied on in <u>Lawrence</u> control the issue of whether or not Guidry had a duty to notify Plaintiffs of their eligibility for a PRP.  Guidry contends that even if Mrs. Green's subsequent conversations with him about increasing coverage under her flood policy operated to restart peremption, Plaintiffs' claims are still perempted, because Mrs. Green did not recall having any discussions with Guidry about increasing her flood insurance amount for either property after Hurricane Katrina, which occurred in 2005.  Guidry contends that Plaintiffs' claims for payment of a thing not owed are perempted and lack any evidentiary or legal support for two reasons.  First, Guidry asserts that Plaintiffs cannot establish that they paid

Guidry anything, because all flood insurance payments were paid to Allstate, not Guidry.  Second, Guidry contends that Plaintiffs incurred an obligation to pay for the standard flood policy that they applied for and received.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."  Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict

if the evidence went uncontroverted at trial.'" <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.  If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>See, e.g.,</u> <u>id.</u> at 325; <u>Little</u>, 37 F.3d at 1075.

<strong>DISCUSSION</strong>

As a threshold matter, the Court finds that Guidry's reading of <u>Lawrence</u> is correct and that the insurance agent in <u>Lawrence</u> prevailed on both duty and peremption.  Moreover, the case that Plaintiffs rely on for the proposition that Guidry owed Plaintiffs a duty to inform them of their eligibility for a PRP, <u>Durham</u>, has been consistently undermined by subsequent Louisiana cases, most

10

recently, in <u>Isidore Newman School v. J. Everett Eaves, Inc.</u>, 2009-2161 (La. 7/6/10); 42 So. 3d 352, 354, 356 (rejecting the argument that insurance agent had duty to inform insured of different coverage options available and to explain the costs and potential benefits of those coverages).  Notably, in <u>Isidore Newman School</u>, the Louisiana Supreme Court cited <u>Dobson v. Allstate</u>, 06-0252, 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D. La. July 21, 2006), the same decision that this Court relied on in <u>Lawrence</u>, for the proposition that an agent has no duty to "'spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the correct type of coverage.'" <u>Isidore Newman School</u>, 42 So. 2d at 358 (quoting <u>Dobson</u>, 2006 WL 2078423, at *10).  Thus, the Court finds that Guidry owed the Plaintiffs no duty to inform them of their eligibility for a PRP, and moves to analysis of the remaining issues.

### 1. Fraud

Under Louisiana law, fraud is defined as "a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953.  "To recover under a cause of action in delictual fraud, a plaintiff must prove three elements: (1) a misrepresentation of a material fact, (2) made with the intent to deceive, (3) causing justifiable reliance

11

with resultant injury." <u>Becnel v. Grodner</u>, 2007-1041 (La. App. 4 Cir. 4/2/08), 982 So. 2d 891, 894 (citing <u>Newport Ltd v. Sears Roebuck & Co.</u>, 6 F. 3d 1058, 1068 (5th Cir. 1993)).  However, fraud may result from silence or inaction if the silent party had a duty to speak or disclose information.  <u>Greene v. Gulf Coast Bank</u>, 593 So. 2d 630, 632 (La. 1992) (citations omitted); <u>Bunge Corp. v. GATX Corp.</u>, 557 So. 2d 1376, 1383 (La. 1990).  Thus, to recover on their fraud claim against Guidry, Plaintiffs must prove that Guidry made an affirmative misrepresentation or remained silent when he had a duty to speak or disclose information.

Although Plaintiffs allege that Guidry knowingly mis-zoned the Plaintiffs' properties in order to obtain higher premiums and commissions, Mr. and Mrs. Green conceded in their depositions that they have no evidence that Guidry mis-zoned their property.[5]

---

[5] Depo. of Mrs. Green, Ex. B, p. 65 (alterations added)

> Q. Okay. In the complaint that was filed by your attorney in this lawsuit, it states - - or petition for damages, it states that: Defendants [sic], Guidry miszoned your property.  Do you believe he miszoned your property?

> A. I can't say he miszoned it.  But in writing the policy, he did not offer me a preferred risk policy according to the zone rating for the property.

> Q. Okay.  So you don't necessarily believe he miszoned it.  You're just saying he didn't offer you the preferred risk policy.

> A. Right.

Depo. of Mr. Green, Ex. C, p. 17

> Q. And in the petition, it asserts Mr. Guidry miszoned your property.  Do you have any evidence regarding this allegation, that the property was miszoned?

> A. No.

Plaintiffs do not argue in their opposition that Guidry mis-zoned the property or point to any evidence of miszoning or any other affirmative misrepresentation.   Rather, they concede that their fraud claim is predicated upon Guidry's silence, specifically his failure to offer the Plaintiffs a PRP.[6]   Thus, the determinative issue with respect to Plaintiffs' fraud claim against Guidry is whether Guidry had a duty to disclose to Plaintiffs that they were eligible for a PRP through the NFIP.   <u>Greene</u>, 593 So. 2d at 633 (noting that it is not necessary to address whether the other elements of fraud have been met when fraud is predicated on silence and the court has determined that the defendant had no duty to speak or disclose information).

The Court addressed the identical issue in <u>Lawrence v. Fid. Nat'l. Ins. Co.</u>, 06-1072, 2007 WL 1741785, at *2 (E.D. La. June 11,

---

[6] (Rec. Doc. 25, p. 5); Depo. of Mrs. Green, Ex. B, p. 64 (alterations added).

> Q. Okay. And so - -  I know you have filed a lawsuit against [Guidry]. And I'm guessing - - I'm wondering: What are you claiming he did wrong then, with respect to the Monroe Street property and the Fielding Street property?
>
> A. I claim that, as a trained insurance agent of Allstate Insurance, he did not offer me or my husband the option to have the lowest possible flood insurance, which, to my knowledge now, is called a preferred risk policy.  He did not offer me the opportunity to sign up for that kind of policy.  He never discussed the preferred risk insurance policy options to me or my husband.

Depo. of Mr. Green, Ex. C, p.  17

> Q. You are a plaintiff in a lawsuit that has named my client, Mr. Guidry. What do you believe my client Mr. Guidry, did wrong?
>
> A. Well, he did not inform us about the - - the different policies, that we could have gone with a policy that paid less, that we were paying a higher premium.

2007), aff'd, 279 Fed. Appx. 321 (5th Cir. 2008). In <u>Lawrence</u>, the plaintiffs sued Fidelity National Insurance Company ("Fidelity") and Eagan Insurance Agency, Inc. ("Eagan") claiming that the defendants breached an obligation to offer them the best flood coverage at the best price when they failed to inform them that they were eligible for a PRP through the NFIP, which could provide them with maximum policy limits for less than their current premium payments. <u>Id.</u> at *1. The Court concluded that Eagan, the insurance agent in <u>Lawrence</u>, had no duty to review the plaintiffs' policy, determine, and advise them that they could obtain maximum coverage for a lesser price based on their eligibility for a PRP through the NFIP. <u>Id.</u> at *2. The Court noted in <u>Lawrence</u> that "'no case imposes a duty on an agent to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage.'" <u>Id.</u> (citing <u>Dobson</u>, 2006 WL 2078423, at *10. The Court also noted that under <u>Motors Ins. Co. v. Bud's Boat Rental, Inc.</u>, 917 F.2d 199, 205 (5th Cir. 1990), it is the client's responsibility to advise the agent of the coverage needed. <u>Lawrence</u>, 2007 WL 1741785, at *2 (citing <u>Motors Ins. Co.</u>, 917 F.2d at 205). The Court finds that Guidry, like Eagan, had no duty to review plaintiffs' policy and determine and advise them that they could obtain maximum coverage for a lesser price based on their eligibility for a PRP. Because Guidry had no duty to disclose to Plaintiffs that they were eligible for a PRP, his failure to make

14

the disclosure is insufficient to give rise to a claim for fraud. Thus, the Court finds that Guidry is entitled to judgment as a matter of law on the Plaintiffs' fraud claim in light of the Plaintiffs' failure to produce any evidence that Guidry made an affirmative misrepresentation or suppressed the truth.

**2. Louisiana Unfair Trade Practices Act**

LUTPA provides in pertinent part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." LSA-R.S. 51:1405(A); Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1056. The statute uses broad, subjective terms and does not specifically define or enumerate the acts and practices that constitute "unfair methods of competition" or "unfair or deceptive acts or practices." Levine v. First Nat. Bank of Commerce, 2006-0394 (La. 12/15/06); 948 So. 2d 1051, 1065. Rather, the courts decide, on a case-by-case basis, what conduct violates the statute. Cheramie Servs., Inc. 35 So. 3d at1059 (citations omitted); Levine, 948 So. 2d at 1066 (citations omitted). Louisiana courts have repeatedly held that to recover under LUTPA, the plaintiff must show that the alleged conduct "'offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" Cheramie Servs., Inc., 35 So. 2d at 1059 (citations omitted); Computer Mgmt. Assistance Co. v. Robert F. DeCastro,

Inc., 220 F.3d 396, 404 (5th Cir. 2000) ("A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical, oppressive or unscrupulous...") (citing Schenck v. Living Centers-East, Inc., 917 F. Supp. 432, 439 (E.D. La. 1996)). "[T]he range of prohibited practices under LUTPA is extremely narrow." Cheramie Servs., Inc., 35 So. 2d at 1060. "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." Id.

Here, the uncontroverted evidence shows that Guidry acted consistent with his duties as an insurance agent. Mrs. Green, the only party who interacted with Guidry in reference to the flood policies,[7] testified that when she initially procured the flood policies for both properties, Guidry obtained the specific amount of insurance as she requested.[8] Mrs. Green also testified that whenever she requested increases in coverage for the subject property or changes to her policy, Guidry made those changes as requested.[9] The practice that Plaintiffs complain of in this case — Guidry's failure to inform them that they qualified for a PHP[10]

---

[7] Depo. of Mrs. Green, Ex. B, pp. 22-23; Depo. of Mr. Green, Ex. C, pp. 15.

[8] Depo. of Mrs. Green, Ex. B, pp. 23, 49-50, 63-64.

[9] Depo. of Mrs. Green, Ex. B, pp. 31-32, 54-55, 63-64.

[10] See supra n. 6; Depo. of Mrs. Green, Ex. B, pp. 35-36, 57, 64-65 and Depo. of Mr. Green, Ex. C, pp. 70.

when he had no duty to do so — is not the sort of egregious conduct that rises to the level of a LUTPA violation. Louisiana courts have found that affirmative misrepresentations by insurance companies, even negligent misrepresentations, can give rise to LUTPA violations when the insurance company has a duty to provide the plaintiff with correct information. See Hernaez v. Mothe Life Ins. Co., 09-147 (La. App. 5 Cir. 11/10/09); 28 So. 3d 454, 458 (noting that an insurance company's *negligent misrepresentation* can constitute a LUTPA violation *when it had a duty to supply correct information* to the plaintiff). However, the Court is unable to locate any Louisiana case in which a Louisiana court found a violation of LUTPA based on a party's failure to make a disclosure that the party had no duty to make. In Capitol House Pres. Co. v. Perryman Consultants, Inc., 98-1514 (La. App. 1 Cir. 12/10/98); 725 So. 2d 523, the Louisiana First Circuit noted that it *might* constitute a LUTPA violation for a party to fail to make a disclosure that they were statutorily obligated to make. Id. at 528. Here, the Court has already determined that Guidry had no duty, statutory or otherwise, to disclose to the Plaintiffs that they qualified for a PRP.

Moreover, the Louisiana Second Circuit's decision in United Grp of Nat'l Paper Distribs., Inc. v. Vinson, 27-739 (La. App. 2 Cir. 1/25/96); 666 So. 2d 1338, although factually distinguishable from the instant case, supports the proposition that a party's

17

failure to make a disclosure that they had no obligation to make does not give rise to a LUTPA violation.  See id. at 1346-48. LUTPA prohibits only a very narrow range of egregious activity; there are no Louisiana cases directly on point; and the limited cases available suggest that it is unlikely that Louisiana courts would find a LUTPA violation in this case.  The Plaintiffs' fraud claims fail for reasons previously discussed, and the Plaintiffs have not pointed to any other evidence of misrepresentation or deceit by Guidry.  Therefore, the Court finds that Guidry's failure to disclose to the Plaintiff's that they qualified for a PHP, in the absence of any duty to do so, is not the type of oppressive, unscrupulous, unethical, or deceitful conduct that violates public policy and constitutes a LUTPA violation.  Consequently, Guidry is entitled to judgment as a matter of law on the Plaintiffs' LUTPA claims.

### 3. Negligence and Breach of Fiduciary Duty

Where there is an agreement to procure insurance, the duty of the insurance broker is analogous to the duty of the agent. Isidore Newman School, 42 So. 3d at 356.

> An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance.  The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.

18

Id. (citing <u>Karam v. St. Paul Fire & Marine Ins. Co.</u>, 281 So. 2d 728, 730-31 (La. 1973)).

The insurance agent owes a duty of "reasonable diligence" to his customer that is fulfilled when the agent procures the requested insurance.   <u>Isidore Newman School</u>, 42 So. 2d at 356 (citing <u>Roger v. Dufrene,</u> 613 So. 22d 947, 949 (La. 1993)).   This duty of "reasonable diligence" "has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage." <u>Isidore Newman School</u>, 42 So. 2d at 359.   "It is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed."   <u>Id.</u>   In the petition, Plaintiffs allege that Guidry breached his legal duties to the Plaintiffs in: (1) failing to know the different types, terms, and conditions of insurance policies available, (2) failing to use reasonable diligence in obtaining insurance that a customer requests, and (3) failing and neglecting to exercise the degree of care expected of a prudent insurance broker or agent.   Guidry points out that there is no evidence he failed to do anything but offer the Plaintiffs a PRP.[11]   Guidry points out that Mrs. Green, the only party who interacted with him regarding the flood polices, conceded in her deposition that he

_____

[11] <u>See</u> <u>supra</u> n. 6.

always obtained the insurance coverage requested.[12] Plaintiffs do not point to any evidence in the record that Guidry ever failed to procure the requested coverage. Rather, the Plaintiff's negligence and breach of fiduciary duty claims against Guidry hinge on the premise that Guidry owed the Plaintiffs a fiduciary duty to inform them of the availability of a the PRP.

As discussed by this Court in <u>Lawrence</u>, and reiterated by the Louisiana Supreme Court in <u>Isidore Newman School</u>, Guidry owed the Plaintiffs no duty to advise them of the correct type of coverage and thus no duty to inform them of their eligibility for a PRP. The Plaintiffs were charged with knowledge of the existence of the PRP. <u>Federal Crop Ins. Corp.,</u> 332 U.S. at 383-85. It was their duty to request a PRP if they wanted one. <u>Isidore Newman School</u>, 42 So. 3d at 359. Mrs. Green testified that she did not recall any discussions with Guidry regarding a PRP before she called requesting a refund in June of 2011.[13] Plaintiffs have not pointed to any evidence that they ever inquired about a PRP prior to calling and asking for a refund. Plaintiffs have not pointed to any evidence in the record that Guidry failed to procure the type and amount of coverage Mrs. Green requested throughout the duration of the business relationship. Assuming that Guidry failed to offer Plaintiffs a PRP, which Guidry disputes, he had no duty to do so,

---

[12] Depo. of Mrs. Green, Ex. B., pp. 23, 31-32, 49-50, 54-55.

[13] Depo. of Mrs. Green, Ex. B., pp. 35-36.

and thus that alleged failure, as a matter of law, does not give rise to a claim for negligence or breach of fiduciary duty.  The Court finds that there is no genuine issue of material fact with respect to Plaintiffs' negligence and breach of fiduciary duty claims and that Guidry is entitled to judgment as a matter of law on those claims.

### 4. Peremption

In addition, all of Plaintiffs' claims against Guidry, except for their fraud claim, which fails for the reasons discussed above, are perempted pursuant to La. R.S. 9:5606.  The statute provides in pertinent part:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> B. . . .
>
> C.  The peremptive period in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953
>
> D. The one-year and three-year periods of limitation provided in Subsection a of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

21

La. R.S. 9:5606.

Guidry argues that the peremptive period began to run when Plaintiffs procured the policies in 1991 and 2004[14] respectively, and that all of the Plaintiffs claims were thus perempted when they filed suit on August 29, 2011.  Plaintiffs counter, relying on Fidelity Homestead Ass'n v. Hanover Ins. Co., 458 F. Supp. 2d 276 (E.D. La. 2006),  that Guidry's insistence in writing the standard risk policy instead of the PRP at each renewal constituted an act separate from the initial policy procurement, inflicted immediate additional damage on the Greens in the form of higher premiums, and operated to restart peremption.  Plaintiffs further argue that because it is unclear when the last of the renewal transactions occurred, Guidry has not carried his burden of proving that the matter is perempted.  Guidry replies that even if the renewal discussions restarted peremption, Plaintiffs' claims were still perempted when they filed suit in 2011, because Mrs. Green did not

---

[14] Mrs. Green's testimony in her deposition varied with respect to the date that she acquired flood insurance on the Monroe Street property through Guidry. At one point in her deposition, Mrs. Green testified that she obtained flood insurance on the Monroe Street property around 2004.  Depo. of Mrs. Green, Ex. B, pp. 44, 49.  She later testified that she *may* have obtained flood insurance for the Monroe Street property from Guidry after Hurricane Katrina (in 2005), because Katrina may have been the event that motivated her to procure flood insurance for the property. Depo. of Mrs. Green, Ex. B, pp. 137-40.  Thereafter, Mrs. Green testified that she did not recall any conversations about her flood insurance after Hurricane Katrina except for a conversation related to the elevation of the Fielding Street property sometime in 2008 or 2009.  Depo. of Mrs. Green, Ex. B, pp. 139-40 ("To my recollection, the only time we - - I discussed flood insurance with Mr. Guidry after Katrina was around 2008 or nine in relationship to the elevation program...So related to the Fielding property - - property is the only time I would have had a discussion after Katrina related to flood insurance.")

recall having any discussions with Guidry about increasing her flood insurance amount for either property after Hurricane Katrina in 2005.

The Court finds Guidry's argument persuasive.  Ordinarily, the three year peremptive period begins when the insured purchases the policy at issue.  Biggers v. Allstate Ins. Co., 04-282 (La. App. 5 Cir. 10/26/04); 866 So. 2d 1179, 1183.  It is evident that Plaintiffs' claims against Guidry are perempted from the face of their state court petition, because the Plaintiffs claim that they obtained the flood policy on the Fielding property in 1991 and the flood policy on the Monroe Street property in 2006.  Thus, the Plaintiffs' rights with respect to their policy on the Fielding Street property were extinguished in 1994 and their rights with respect to the Monroe Street property were extinguished in 2009, several years before they filed the instant lawsuit on August 29, 2011.  In Rando v. Anco Insulations, Inc., 2008-1163 (La. 5/22/09); 16 So. 3d 1065, the Louisiana Supreme Court explained:

> Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension. As such the following rules governing the burden of proof as to prescription apply to peremption. If prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.

Id. at 1082 (citations omitted).  Because the peremption in this case is evident on the face of the pleadings, the plaintiffs bear the burden of showing that their claims against Guidry are not

perempted.  Consequently, the confusion in Mrs. Green's deposition
as to whether and when she obtained flood insurance on the Monroe
Street Property works to Plaintiffs' detriment not Guidry's.  As
Guidry points out, Mrs. Green testified that she obtained the flood
policy on the Monroe Street property in approximately 2004.[15]
Although she later testified that she *may* have acquired flood
insurance on the Monroe Street property after Hurricane Katrina (in
2005),[16] she also stated that the only time she remembered
discussing flood insurance with Guidry after Katrina was around
2008 or 2009 in relation to the elevation of the Fielding
property.[17]  In the pleadings, Plaintiffs assert they acquired flood
insurance from Guidry on their Monroe Street property in 2006.
Plaintiffs point out that it is unclear when the latest of Mrs.
Green's renewal discussions with Guidry occurred but do not refer
to any facts in the record showing that Plaintiffs procured their
flood insurance policy on the Monroe Street property in 2008 or
later.  Considering the pleadings and Mrs. Green's deposition
testimony, no rational factfinder would infer that Plaintiff
initially acquired the flood insurance on the Monroe Street
property in 2008 or later, as required to carry their burden of
proving that their claims against Guidry are not perempted pursuant

---

[15]Depo. of Mrs. Green, Ex. B, pp. 44, 49.

[16]Depo. of Mrs. Green, Ex. B, pp. 138-39.

[17] Depo. of Mrs. Green, Ex. B, pp. 139-40.

to the three year period in La. R.S. 9:5606.  See Larmann v. State
Farm Ins. Co., No. 03-2993, 2005 WL 357191, at *3 (E.D. La. Feb.
11, 2005) (When the moving party has carried its burden under Rule
56(c) by "identifying those portions of the record that it believes
demonstrate the absence of a genuine issue of material fact" the
burden shifts to the opponent to "do more than simply show that
there is some metaphysical doubt as to the material facts.")

Moreover, Mrs. Green's renewal discussions with Guidry did not
operate to restart peremption.  Renewals of insurance polices do
not generally operate to restart peremption, unless "the complained
of conduct constitutes separate and distinct acts, each of which
gives rise to immediately apparent damages."  Fidelity, 458 F.
Supp. 2d 276, 280 (E.D. La. 2006) (citing Biggers, 886 So. 2d at
1182).  Despite Plaintiffs' assertions to the contrary, Guidry's
"continued insistence" on writing the standard risk policy and
continued omission of the Plaintiff's eligibility for the PRP at
each renewal was merely a continuation of the same omission and
damage Guidry allegedly inflicted when he allegedly wrote the
Plaintiffs' original standard risk policies without informing them
of their eligibility for a PRP in 1991 and 2004/2005,
approximately.

Even though Mrs. Green increased the coverage under her
policies at various renewals, the Plaintiffs' alleged damages — the
higher premiums — were bound to continue at renewal regardless of

the coverage changes.  It was unnecessary for Guidry to change the type of flood policy the Plaintiffs carried to increase the coverage on their properties.  Thus, the Court finds that the renewal discussions did not operate to restart peremption in this case and that Plaintiffs' claims against Guidry for negligence, breach of fiduciary duty, detrimental reliance, and payment of a thing not owed, were perempted when the Plaintiffs filed the instant lawsuit in August 29, 2011. Consequently, Guidry is entitled to judgment as a matter of law on those claims.

Accordingly, **IT IS ORDERED** that Defendant Guidry's Motion for Summary Judgment is **GRANTED.   IT IS FURTHER ORDERED** that all of Plaintiffs' claims against Guidry are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 13th day of November, 2012.


CARL J. BARBIER
UNITED STATES DISTRICT COURT